UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE:<br>    RFI MANAGEMENT, INC.<br>               DEBTOR | CHAPTER 11<br>CASE NO. 17-80247 |
| RFI MANAGEMENT, INC.,<br>    PLAINTIFF,<br>v.<br><br>SWIFT FINANCIAL CORPORATION d/b/a<br>SWIFT CAPITAL,<br>    DEFENDANT. | Adv. Pro. No.: _____ |

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

RFI Management, Inc. (the "Debtor," the "Plaintiff," or "RFI") complains of Defendant Swift Financial Corporation d/b/a Swift Capital (the "Defendant" or "Swift") as follows:

**SUMMARY**

1. This is an adversary proceeding seeking declaratory and injunctive relief to stay or enjoin the prosecution of a potential lawsuit or arbitration that the Defendant is threatening to bring against Edward Rosa, president of the Debtor and purported guarantor of the Debtor's obligations to Swift, likely in the state of Delaware and likely outside the court system in a private arbitration (the "Guarantor Action").

2. The Guarantor Action would arise from the Debtor's alleged "sale" of 14% of its future receivables to Swift (the "Agreement"). The Debtor's Agreement with Swift contains a springing guaranty clause under which Mr. Rosa guarantees RFI's performance under the Agreement *if* RFI breaches representations, warranties or covenants of the Agreement. Under

the plain meaning of this clause, it is necessary for this Court to first determine whether RFI is in breach and the extent of the Debtor's obligation to Swift before any action against Mr. Rosa can proceed.  Under the terms of the Agreement, the Debtor's representations, warranties, and covenants are "deemed to apply not just to [the Debtor], but to each Guarantor individually." Swift has indicated that it intends to use the arbitration process to discover alleged breaches of representations and warranties made by Mr. Rosa when he was acting on behalf of the Debtor. Any of the claims that Swift would attempt to bring in this proposed arbitration or lawsuit are actually core proceedings in this bankruptcy.  The interests of the Debtor and Mr. Rosa are so intimately intertwined that the Debtor would be the real party in interest in this arbitration or lawsuit and these are issues that this Court will need to decide when determining the extent of Swift's claim and whether any of that claim is secured.

3. If the Guarantor Action is allowed to proceed outside of this bankruptcy (and if it is arbitrated it would be outside the entire court system and impossible to remove to this Court) it threatens to harm the Debtor's estate and imperil its ability to reorganize.   The Guaranty Action could arrive at a different claim amount than would be arrived at by the claims process in this Court and an independent determination regarding the Debtor's actions in regard to property of the estate.

4. The Guarantor Action will harm the Debtor and its estate in still other ways.  If, as Swift threatens, the Guarantor Action will concern acts that Mr. Rosa took in his role as president, he may well be forced to bring a claim against the Debtor's general liability insurance policy for coverage, risking depletion of an insurance policy and coverage that the Debtor would rely on if Swift attempted a second bite at the apple by later bringing those claims directly against the Debtor in this bankruptcy.  The Debtor may also face indemnification

claims from Mr. Rosa because the Guarantor Action would be based on Mr. Rosa's acts in his role as president of the Debtor.

5. In addition, under the Agreement any lawsuit or arbitration could be brought in Delaware. Even if the proposed action were a straightforward collection suit against a Guarantor (and it most certainly is not) prosecuting an action against the Debtor's president in Delaware would require Mr. Rosa to take substantial time from his essential role running the company's construction jobs. Because the Guarantor Action would require independent evaluation of Ms. Rosa's acts as president of the Debtor, and extensive investigation of that role, it would provide an unwelcome distraction at the very time he is most needed to run RFI.

6. Any action against the Debtor by Swift is presently stayed as to the Debtor by the automatic stay of Section 362, and the Debtor contends that any action again Mr. Rosa is likely stayed as well. The Debtor brings this adversary proceeding pursuant to Fed. R. Bankr. P. 7001 seeking declaratory and injunctive relief to stay or enjoin Swift's potential arbitration or lawsuit against Mr. Rosa pursuant to sections 362 and 105 of the Bankruptcy Code during the pendency of the Debtor's chapter 11 case.

## PARTIES

7. Plaintiff RFI is a North Carolina corporation with its principal executive office in Durham, North Carolina.

8. Upon information and belief Defendant Swift is a Delaware Corporation with its principal office in Delaware.

## JURISDICTION

9. This Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

10. This adversary proceeding constitutes a core proceeding within the meaning of

one or more subsections of 28 U.S.C. § 157(b).

11. To the extent that this adversary proceeding is determined not to be a core proceeding, Plaintiff stipulates to the entry of final judgments by this Court.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## FACTUAL BACKGROUND

13. RFI works as a subcontractor installing a full range of flooring products and wall materials, principally in hotel properties across the United States and in Puerto Rico.

14. The Debtor experienced rapid growth in the past two years, but also has had serious cash flow issues. This led to the Debtor's taking out a series of short-term, high-interest loans that temporarily relieved cash flow pressures, but ultimately increased them.

### *RFI's Sale of Future Receivables to Swift*

15. On or about November 16, 2016 the Debtor entered into a document styled a "Future Receivables Sale Agreement" with Swift Financial Corporation ("Swift") (the "Agreement"). Under the terms of the Agreement the Debtor purportedly sold Swift $176,850.00 (or 14%) of "Future Receivables," defined as Receivables *received* by the Debtor after the Agreement becomes effective. The Agreement has no interest rate and no fixed time to collect these Future Receivables. A copy of the Agreement is attached as Exhibit "1."

16. On the Petition Date, the Debtor's total outstanding receivables are $121,117.62. As indicated above, none of those have been received by the Debtor. The Debtor contends that Swift therefore has no interest in those proceeds.

17. Even if Swift is determined to have an interest in incurred but unreceived accounts receivable (which the Debtor disputes), that interest only extends to 14% of those accounts or $16,956.47. The extent of Swift's claim will likely be determined in separate

litigation regarding objection to its claim and Debtor's Motion for Use of Cash Collateral [Dkt. No. 14].

### *Edward Rosa's Guarantee*

18.     Paragraph 5(a) of the Agreement is entitled Performance Guaranty.  This paragraph states:

> By signing this Agreement, each Guarantor assumes, jointly and severally, the full, complete and timely performance of all of [RFI's] obligations under the Agreement *if a breach of any of [RFI's] representations, warranties or covenants occurs.  If* such a breach occurs, then Guarantor(s) shall perform under this Agreement including paying, or causing to be paid, any amounts that [Swift] would otherwise be entitled to collect from [RFI].

(Emphasis Added).

19.     Paragraph 5(b) goes on to recite the provisions of the Agreement that are applicable to the Guarantor, which include: Section 9 (Representations and Warranties) and Section 10 (Covenants).  Sections 9 and 10 are the sections that, when breached by RFI, trigger Mr. Rosa's obligations under the guaranty.

20.     The Agreement, in Paragraph 24, includes an Arbitration Provision which allows any party to "elect to resolve any Claims . . . or disputes by submitting to binding arbitration." Under the terms of the Agreement, "arbitration will be held in Wilmington, Delaware or other state as may be mutually agreed upon."

21.     On March 31, 2017, two days after the Debtor filed its Chapter 11 case, Mr. Rosa received an email from Voris M. Tejada, Jr., an attorney for Swift.  A copy of the email is attached as Exhibit "2."  Even though Mr. Rosa's obligation comes into being after the Debtor has breached the covenants or representations and warranties, and even though the automatic stay would prevent any action against the Debtor related to those actions, Mr. Tejada threatens to bring a separate action against Mr. Rosa.

### *Debtor's General Liability Insurance*

22. The Debtor has a General Liability Insurance Policy through Erie Insurance Exchange (the "Policy"). The primary policy has a limit of liability of $2,000,000, and a limitation of $1,000,000 per occurrence. Any allegations of breaches of the warranties and representations or covenants by Mr. Rosa could implicate coverage under the Policy, and risks depleting the coverage available to the estate in the course of this bankruptcy.

### *The Debtor may be Obligated to Indemnify Mr. Rosa for the Guarantee Obligations.*

23. The Debtor has indemnification obligations to Mr. Rosa under N.C. Gen. Stat. §§ 55-8-52 and 55-8-56. If an action is brought in an arbitration or lawsuit against Mr. Rosa to determine whether he breached representations and warranties in his role as president of RFI, it would necessarily trigger a duty on the part of the Debtor to indemnify him.

### *The Continuation of the Actions Will Be Detrimental to the Debtor's Estate*

24. If the Guarantor Action is allowed to go forward and is not stayed or enjoined, the Debtor's estate will be harmed and its reorganization efforts will be jeopardized.

25. The Guarantor Action is a core proceeding that seeks to litigate claims regarding RFI's alleged breaches of the representations and warranties contained in its Agreement with Swift. It is a guarantee of RFI's "performance" under the Agreement. The extent of that Agreement, and whether RFI breached it, are properly matters that should be determined by this Court.

26. If the Guarantor Action is allowed to continue, an asset of the Debtor's estate—namely its general insurance policy—risks being depleted, reducing the proceeds available to protect the Debtor's estate.

27. The Guarantor Action will create indemnification obligations for the Debtor under North Carolina law. As a result, Mr. Rosa may have a direct claim against the estate for

6

defense and settlement costs, as well as the costs of satisfying any potential judgment.

28. If the Guarantor Action goes forward the Debtor will face discovery obligations in Delaware and Mr. Rosa, an individual critical to any restructuring, will be distracted from his bankruptcy-related obligations to deal with the Guarantor Action. Mr. Rosa is the sole officer and director of RFI. He manages job sites. He will have the overriding responsibility to shepherd the Debtor through its restructuring, and he will necessarily be distracted from this responsibility if he and RFI are obligated to devote time responding to discovery demands and the defense of this action against him.

### FIRST CLAIM FOR RELIEF
**(Section 362 Declaratory Judgment)**

29. The Debtor realleges the allegations contained in the preceding paragraphs.

30. The Debtor seek an order staying the filing and/or continuance of the Guarantor Action until the effective date of a restructuring plan in this Chapter 11 case, pursuant to sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code.

31. Extension of the stay is warranted because institution of the Guarantor Action against Mr. Rosa would litigate a core bankruptcy proceeding outside of this Court.

32. Extension of the stay is also warranted because institution of the Guarantor Action risks jeopardizing the Debtor's restructuring efforts.

33. Extension of the stay is additionally warranted because institution of the Guarantor Action could deplete the Debtor's insurance coverage that is an asset of the Debtor's estate.

34. Extension of the stay is likewise warranted because continuation of the Guarantor Action could expose the Debtor to an indemnification claim by Mr. Rosa, further jeopardizing property of the Debtors' estate.

35. Extension of the stay is further warranted because continuation of the Guarantor Action against Mr. Rosa would distract Mr. Rosa, who is key to the Debtor's restructuring efforts, from his primary responsibility of shepherding the Debtor through this reorganization.

36. If the Guarantor Action is allowed to continue, the Debtor's prospects for confirming a restructuring plan will be impaired, thwarting the congressional purpose of providing the Debtor with a breathing spell from litigation pressures in its efforts to confirm a plan of reorganization. Accordingly, the automatic stay should extend to Mr. Rosa.

37. Based on the foregoing, the Debtor seeks a declaratory judgment extending the stay under sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code to the institution of the Guarantor Action.

**SECOND CLAIM FOR RELIEF**
**(Section 105 Injunctive Relief)**

38. The Debtor realleges the allegations of the preceding paragraphs.

39. The Debtor seeks an injunction enjoining the prosecution of the Guarantor Action against Mr. Rosa under section 105(a) of the Bankruptcy Code until the effective date of a restructuring plan or further order of this Court.

40. Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

41. Relief under section 105 of the Bankruptcy Code is particularly appropriate in a Chapter 11 case when necessary to protect a debtor's ability to effectively confirm a restructuring plan and to preserve the property of the debtor's estate.

42. For the reasons set forth in this Complaint, this Court should apply section 105

of the Bankruptcy Code to enjoin the institution of the Guarantor Action against Mr. Rosa because the prosecution of that case will frustrate and jeopardize the Debtor's efforts to successfully restructure and will interfere with the property of Debtor's Chapter 11 estate.

43. The likelihood of irreparable harm to the Debtor in the absence of injunctive relief far outweighs any harm to Swift. The extent of Swift's claim in this bankruptcy is far from clear, and Swift will suffer little if any harm if Guarantor Action is enjoined until the effective date of the Debtor's restructuring plan.

44. If the Guarantor Action is not enjoined, the Debtor will likely suffer harm and its restructuring efforts will be threatened, including:

(i) The risk that because a core proceeding would be decided outside this court, Swift's claim will be determined in a different amount and priority than would be decided in the claims adjudication process;

(ii) The risk that the Guarantor Action will result in a depletion of insurance policies and proceeds that are an asset of the Debtor's estate;

(iii) The risk that the Debtor will face indemnification claims from Mr. Rosa; and

(iv) The risk that Mr. Rosa will be distracted, which will frustrate the Debtor's efforts to restructure.

45. The injunctive relief sought by the Debtor is necessary and proper in order to allow the Debtor to restructure, and to provide it with an unobstructed opportunity to get its plan confirmed.

46. The injunctive relief requested herein will serve the public interest by promoting compliance with the congressional purpose of the automatic stay and furthering the Debtor's

efforts to restructure successfully.

47. Based on the foregoing, the Debtor seeks an injunction under section 105 of the Bankruptcy Code to enjoin the Guarantor Action against Mr. Rosa until the effective date of a restructuring plan or further order of this Court

WHEREFORE, the Plaintiff demands judgment against the Defendant and requests the following relief:

(i) the entry of a declaratory judgment that any Guarantor Action against Mr. Rosa is stayed under Bankruptcy Code Sections 362(a)(1) and/or 362(a)(3) until the effective date of a restructuring plan or further order of this Court; and/or

(ii) in the alternative, the entry of an Order granting an injunction pursuant to Bankruptcy Code Section 105(a) enjoining and prohibiting the institution of the Guarantor Action against the Mr. Rosa until the effective date of a restructuring plan or further order of this Court; and/or

(iii) such other relief as this Court deems just and proper under the circumstances.

Dated: April 3, 2017

PARRY TYNDALL WHITE

s/ James C. White_____
James C. White, N.C. Bar # 31859
Michelle M. Walker, N.C. Bar # 41664
100 Europa Drive, Suite 401
Chapel Hill, NC 27517
jwhite@ptwfirm.com
(919) 246-4676
(919) 246-9113 fax

*Attorneys for Debtor-in-Possession*

## VERIFICATION

I, Edward Rosa, president of RFI Management, Inc., verify, based on reasonable inquiry, that the factual statements in the foregoing **Verified Complaint** are true and correct to the best of my knowledge, information and belief.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 4/3/2017

_____
Edward Rosa